**SO ORDERED.**

**SIGNED this 10 day of March, 2014.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

**IN RE:**

**HAROLD P. DEW,**                                        **CHAPTER 11**
**BETTIE P. DEW,**                                        **CASE NO. 13-02284-8-RDD**

       **DEBTORS.**

### MEMORANDUM OPINION

Pending before the Court is the Motion for Appointment of Trustee filed by the Unsecured Creditors Committee (the "Committee") on October 15, 2013 (the "Motion"), the Debtors' Response to Motion for Appointment of Trustee filed by Harold P. Dew and Bettie P. Dew on October 31, 2013, the Debtors' Supplemental Response to Motion for Appointment of Trustee filed by the Debtors on November 18, 2013, and the Response in Support of Motion for Appointment of Trustee filed by Geneva Lafferty Martin, Trustee under Revocable Trust, and Martin Family, LP on November 1, 2013. The Bankruptcy Administrator filed a "No Objection" recommendation regarding the Motion on October 29, 2013. A hearing was held on February 3, 2014 and February 4, 2014, in Greenville, North Carolina, to consider these matters.

On February 5, 2014, the Court entered the order allowing the Committee's Motion and appointing Richard Dewitte Sparkman as the Chapter 11 Trustee. This Memorandum Opinion sets forth the Court's reasoning for that order.

## STATEMENT OF THE FACTS

Harold P. Dew and Bettie P. Dew (the "Debtors") filed a petition for relief under Chapter 11 of the Bankruptcy Code on April 8, 2013.  On May 10, 2013, the Court entered the Order appointing the Committee.

The Debtors are engaged in the business of selling and renting mobile homes in a mobile home park called Westwood Village Mobile Home Park (the "Park") in Greenville, North Carolina. The Debtors acquired the Park in 1997 for the purchase price of $1,395,000.00.  The Debtors own a 100% interest in HPD, LLC ("HPD"), which previously filed a Chapter 11 petition on July 11, 2012, with Case No. 12-05036-8-RDD.  HPD is currently operating pursuant to a Chapter 11 Plan, which was confirmed on January 15, 2013.  In 2007, the Debtors transferred title in the Park to HPD. HPD owns and operates the Park.

Various creditors[1] (the "Creditors") assert claims based on loans made to the Debtors. According to the Petition, the Debtors have unsecured claims totaling approximately $2,272,595.47 as of the petition date.

The Committee moves the Court to appoint a Chapter 11 Trustee under 11 U.S.C. § 1104(a)(1), based on allegations of dishonesty, incompetence, and gross mismanagement of the affairs of the Debtors.  The Committee submits that in 2005, Mr. Dew began soliciting individual investments from the Creditors which were promised net high returns.  The investments, according to the Committee, were to be secured by first position liens on mobile homes located in the Park, that the Debtors owned.  The Committee represents that payments on the loans were to be interest only until the loans matured, at which point a balloon payment of the full principal and any interest would become due. The Committee contends Mr. Dew never made the balloon payment on any of the loans, but instead rolled the loans into new notes, continuing his obligation to make the high

---

[1]In particular, Geneva Lafferty Martin, Trustee under Revocable Trust ("Geneva Martin") filed Proof of Claim No. 17 in the amount of $645,627.63, based on a promissory note dated October 21, 2010. Proof of Claim No. 17, states the claim is secured by real estate, but does not give a description.  Geneva Martin also filed three Proofs of Claims representing unsecured claims as follows: Proof of Claim No. 18 in the amount of $65,738.70, based on a promissory note dated May 15, 2011; Proof of Claim No. 19 in the amount of $11,417.76, based on a promissory note dated June 15, 2011; and, Proof of Claim No. 20, based on a promissory note dated October 10, 2011.  Martin Family, LP filed Proof of Claim No. 21 in the unsecured amount of $33,500.00, based on a promissory note dated October 23, 2006.  Joseph W. Rouse and Geraldine H. Rouse filed Proof of Claim No. 14 in the total amount of $77,784.91 ($8,815.74 as secured), based on a promissory note/judgment lien.  William F. Waide and Margarett F. Waide filed Proof of Claim No. 15 in the amount of $82,000.00 ($80,000.00 secured and $2,000.00 unsecured), based on a lien on mobile home titles. Estate of Ollie Louise Blake filed Proof of Claim No. 16 in the secured amount of $60,000.00, based on a promissory note.  Richard Kane filed Proof of Claim No. 9 in the amount of $206,078.00 (claim does not designate whether it is secured or unsecured), based on money loaned. Sylvia W. Pearce filed Proof of Claim No. 5 in the secured amount of $33,000.00, based on money loaned. Butterfly Ventures, Inc., filed Proof of Claim No. 11 in the secured amount of $10,000.00, based on a loan. Hann Enterprises, Inc., filed Proof of Claim No. 10 in the secured amount of $90,000.00, based on money loaned.  Equity Trust f/b/o B. Connell filed Proof of Claim No. 3 in the amount of $138,060.00 ($80,000.00 secured and $58,060.00 unsecured), based on money loaned.

interest payments. The Committee represents that none of the Creditors were ever paid principal on the loans.  According to the Committee, Mr. Dew represented to some of the Creditors that their promissory notes were secured by mobile homes in the Park, when in fact no mobile homes ever served as security for the notes.  Some of the promissory notes indicated first liens on various mobile homes in the Park.  The Committee contends that Mr. Dew's representations and actions in soliciting investors, violate the North Carolina Security Act.

In addition, the Committee claims that Mr. Dew entered into various sales contracts for mobile homes which had already been pledged as security under the contracts with the Creditors. Further, the Committee contends Mr. Dew received down payments for some of the homes that were sold, and never paid these monies to the Creditors for repayment of debt, even though the sales agreements were transferring their collateral to new buyers.  The Committee estimates that the Debtors received a total of approximately $1,373,850.00 from the Creditor loans. In addition, the Committee estimates that HPD received approximately $700,000.00 to $800,000.00 from stripping the equity from the Park.  The Committee contends that because the Debtors have grossly mismanaged their records and finances it is impossible to determine upon what these monies were spent.  Based on the above allegations, the Committee moves the Court for the appointment of a Chapter 11 Trustee.

The Debtors contend that Mr. Dew never solicited any investments from the Creditors, but that the Creditors offered to make loans to the Debtors in hopes of receiving a high interest rate on their return. The Debtors contend that all of the money received from the Creditor loans was used to purchase and renovate mobile homes in the Park.  The Debtors represent that all of the promissory notes were secured by mobile homes. Some of the promissory notes specifically identified the

4

mobile homes while others only generally identified the mobile homes which were to serve as the collateral.  The Debtors contend that none of the Creditors filed UCC financing statements to perfect their security interests. Therefore, according to the Debtors, all of the promissory notes are unperfected and the Creditors do not have secured claims. Additionally, the Debtors represent that they did pay the Creditors some principal on their loans and did not default on the Creditor loans until February of 2012.  Regarding the mobile homes which were the subjects of sales contracts, the Debtors contend the Creditors were fully aware the Debtors were in the business of leasing and selling mobile homes and needed to fill up the lots in the Park with residents.  Further, there was no provision in the promissory notes which prohibited the Debtors from selling the mobile homes.  The Debtors contend that the appointment of a Chapter 11 trustee is an extraordinary remedy and is not warranted in this case.

## **DISCUSSION**

Pursuant to 11 U.S.C. § 1104(a) the court shall order the appointment of a trustee:

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case. . .; or

> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate . . .

11 U.S.C. § 1104(a)(1)-(2).  The determination of "cause" is within the discretion of the court . *In re Eagle Creek Subdivision, LLC*, 2009 WL 613173 at *1 (Bankr. E.D.N.C. Mar. 9, 2009) (citation omitted).  "The appointment of a trustee in a chapter 11 case is an extraordinary remedy, and there is a strong presumption in favor of allowing the debtor to remain in possession absent the showing of need for a trustee." *Id.* (citation omitted). For the reasons that follow, the Court finds based on

the pleadings, the arguments of counsel, and the evidence presented at the hearing, that pursuant to 11 U.S.C. § 1104(a), the appointment of a Chapter 11 Trustee is warranted for cause including gross mismanagement and incompetence and is in the best interests of creditors and other interests of the estate.

The Court finds that the Debtors grossly mismanaged their affairs. "Gross mismanagement is manifest when creditors may reasonably lose all confidence in the ability of management to direct the reorganization effort." *Id.* (citing 7 Collier on Bankruptcy ¶ 1104.02[3][c][i] (Alan N. Resnick & Harry J. Sommer, eds, 15ed. Rev.2007)).  At the hearing, counsel for the Creditors represented that the Creditors have no faith in the ability of the Debtors to continue operating the Park.  The Court finds the Creditors' lack of trust is reasonable and follows good faith attempts to allow the Debtors to manage their business affairs.  Based on the testimony and evidence received at the hearing, it is evident there is a serious lack of trust and confidence in the Debtors' management.  The Debtors have filed two amendments to their Chapter 11 Plan.  The Debtors' Plan consists of twenty classes. The Debtors' Second Amendment to Plan of Reorganization proposes to treat all of the Creditors' claims as unsecured, with the exception of Geneva Martin's claim, a portion of which is to be treated as secured.  The Ballot Report shows that 100% of the Creditors and 100% of the Unsecured Claims have filed ballots rejecting the Debtors' proposed Chapter 11 Plan.  Class 20, consisting of Small General Unsecured Claims, accepts the Debtors' proposed Plan.  It is clear the Creditors have reasonably lost all confidence in the ability of the Debtors to direct their reorganization efforts.

The Court has little confidence in the receipts and disbursements reported in this case.  At the hearing, Mr. Dew testified that Able Realty collects rents for the mobile homes owned by the

Debtors, HPD, and the Debtors' son. Mr. Dew owns a 100% interest in Able Realty. Able Realty collects a six percent fee for its services. The amount of rents deposited into Able Realty do not correspond to the rents deposited into the Debtors' Debtor in Possession account and do not correspond to the rents deposited into HPD's Debtor in Possession account. Mr. Dew was unable to provide the Court with any explanation for the discrepancy. In addition, Mr. Dew was unable to recall how many mobile homes he owned or how many mobile homes were situated on the Park. He was unable to differentiate between which mobile homes were owned by the Debtors, HPD, or his son.

Mr. Dew testified that he executed various sales agreements for mobile homes. Several of the mobile homes subject to the sales agreements, had already been pledged as security under contracts with the Creditors. The promissory notes accompanying such sales agreements state the note is secured by a first lien on the mobile home. The promissory notes indicate Harold Dew is the note holder and that the insurance policies should name Harold Dew as the first lien holder. Further, the promissory notes indicate that upon payment in full, Mr. Dew would deliver title free and clear of the liens to the buyers. Mr. Dew neither sought permission of the lienholders to enter into the sales agreements, nor did he disclose the sales agreements to the lienholders. Mr. Dew received down payments on each of the homes subject to the sales agreements and testified that he did not pay any of the monies he received as down payments to the Creditors whose mobile homes were sold. This Court has held that the sale of property subject to a lien without the lienholder's consent constitutes a "willful and malicious injury" for purposes of 11 U.S.C. § 523(a)(5). *See Ramirez-Lopez v. Cox* (*In re Cox*), AP No. 11-00259-8-RDD, 2012 WL 6681805 at *4 (Bankr. E.D.N.C. Dec. 21, 2012) (finding a willful and malicious injury pursuant to Section 523 when the debtor sold

property subject to a lien, without the lienholder's consent and without informing the purchaser of the lien) ; *See Automotive Finance Corp., v. Ward* (*In re Ward*), Ap. No. 11-00333-8-JRL, 2012 WL 2328111 at *2 (Bankr. E.D.N.C. June 19, 2012) (finding a willful and malicious injury when the debtor borrowed money to purchase cars for his car dealership and later sold four cars without paying off the liens encumbering them, when the debtor had previously agreed to the terms of a financing agreement, which required the dealership to pay off the lien within seventy-two hours of selling the vehicle); *but cf. John Deere Const. & Forestry Comp. v. Keeter,* (*In re Keeter*) AP No. 10-0033-8-JRL, 2011 WL 308955 at *3 (Bankr. E.D.N.C. Jan. 28, 2011) (finding that the debtor did not commit a willful and malicious injury when the loan contract contained an express provision that any attempt to sell or encumber an interest in the goods would instead be an event of default and was not prohibited under the contract).

In addition,  Dr. Richard Kane, one of the Creditors, testified that Mr. Dew represented to him that his promissory note was secured by "a first lien on ten 1996 or new Mobile Homes." Unsecured Creditors Comm. Mtn. Ex. B, at 1. Dr. Kane testified that he visited the Park, and Mr. Dew pointed out to him the mobile homes that served as security for the promissory note.  At the hearing, Mr. Dew was unable to identify the mobile homes that were to secure Dr. Kane's promissory note.  Similarly, Joseph Rouse testified that he received a promissory note from the Debtors that claimed it was secured by a "first lien on six 1996 or newer Mobile Homes." Unsecured Creditors Comm. Mtn. Ex. C, at 1.   Mr. Dew was unable to identify the six mobile homes that secured the Rouse's promissory note.  In total, the Debtors received approximately $1,373,850.00 from the Creditor loans.  Mr. Dew contends that the money received from the Creditor loans was

used to purchase and renovate mobile homes. However, he was unable to present any records showing that the funds were used for that purpose.

Further, the Debtors failed to list certain assets and transfers in their original Schedules. The Debtors failed to disclose real property in which Bettie Dew owned an interest on Schedule A. Schedule A was amended on September 11, 2013, to include Ms. Dew's 50% interest in a rental house and lot located at 304 E. St., North Wilkesboro, North Carolina with a value of $10,000.00. In addition, the Debtors failed to disclose within their original Statement of Financial affairs that in 2011, Ms. Dew transferred 406 5th St., North Wilkesboro, North Carolina 28659 to her son. The Statement of Financial Affairs was amended on September 11, 2013 to include the transfer of the property located at 406 5th St., North Wilkesboro, North Carolina 28659 on October 26, 2011 for $12,000.00. The Debtors made the above amendments to their Schedules after receiving a letter from the Committee dated September 9, 2013, informing the Debtors of the above omissions, along with others. The Committee alleges there are additional errors in the Petition which result from the Debtors' inadequate record keeping. Pursuant to Bankruptcy Rule 1007, debtors are required to list all assets and liabilities with the court.

Based on the evidence and the testimony, it is clear that the acts committed by Mr. Dew were done with at least a reckless disregard of the interest of the Creditors which amounts to gross mismanagement. Without an independent third party to oversee the business affairs of the Debtors, the Debtors lack managerial credibility to continue the Park. The appointment of an independent trustee allows an opportunity for the Creditors to gain faith in the Debtors' reorganization effort and appeases concerns of gross mismanagement and incompetence going forward. In addition, the appointment of a Chapter 11 trustee is in the best interests of the estate and the creditors.

## <u>CONCLUSION</u>

Based on the foregoing, the Committee's motion was allowed and Richard Dewitte Sparkman was appointed as the Chapter 11 Trustee by order entered on February 5, 2014.

**SO ORDERED**.

**END OF DOCUMENT**